UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**GO NORTH GROUP AB,**<br><br>      **Debtor in a Foreign Proceeding.** | Case No. 24-11598 (MEW)<br><br>Chapter 15 |

## ORDER GRANTING EMERGENCY MOTION FOR PROVISIONAL RELIEF

This matter came before the Court upon the *Emergency Motion for Provisional Relief*, made by Petitioner Magnus Löfving, the duly appointed administrator ("Petitioner") of the above-named debtor Go North Group AB ("Debtor"). The Debtor is the subject of a restructuring proceeding under supervision of the District Court of Gothenburg, Sweden (the "Swedish Proceeding"). The Debtor filed various declarations, memoranda of law and supporting papers in support of its request for recognition of the Swedish proceeding as a "foreign main proceeding" and in support of the Debtor's request for provisional relief under section 1519 of the Bankruptcy Code.

One of the issues that has prompted the Debtor's request for provisional relief is the pendency of an arbitration proceeding brought by BSB Industries, LLC (" BSB"). BSB previously sold assets to the Debtor and has contended, in the arbitration, that the Debtor breached the terms of the sale agreement. The Debtor provided the Court with a copy of a Scheduling Order in the arbitration, which stated that the arbitrator planned to rule as to "whether a breach of the Agreement has occurred and, if it has, whether the remedy of emergency measures requested by Claimant shall be granted," including a potential direction that the relevant business be transferred back to BSB. ECF No. 4, Ex. 2. The Scheduling Order contemplated the final submission of

1

papers on September 18, 2024, and stated that the arbitrator "will endeavor to issue my decision as soon as practicable after Wednesday, September 18, 2024." *Id.*

The Debtor's motion for provisional relief was filed with this Court on September 16, 2024. After reading the papers (including the scheduling order in the arbitration), I scheduled a hearing for this morning, September 18 (prior to the specified date for issuance of a decision by the arbitrator). I was informed by the parties this morning that the arbitrator had been advised of the filing of the chapter 15 decision and of the application for provisional relief, and that the Debtor had requested a delay in the arbitration, but that BSB had opposed the delay. I was also informed that the arbitrator then issued a decision yesterday (September 17) – prior to the date that the Scheduling Order had originally set for the final submission of papers, and prior to the date specified in the Scheduling Order. I have not been provided with a copy of the decision, but I am told that the arbitrator has directed that the Debtor return assets to BSB.

It seems plain from the circumstances and the timing of the issuance of the arbitrator's order, when compared to the previously ordered schedule, that the order was issued in an effort to outrace the Debtor's request for provisional relief. Issues as to whether the arbitrator's decision can or should be given effect under these circumstances, and issues as to whether the arbitrator's decision may have violated the stay associated with the Swedish proceeding (and whether I should enforce that stay, which predated the arbitrator's decision) are left for another day.

The issue presently before me is whether the automatic stay should be applied immediately. BSB argued this morning that the arbitrator's order demonstrates that BSB is likely to win on the merits of its dispute with the Debtor, that BSB faces irreparable harm if it does not obtain a return of its assets, and that the balance of equities favors BSB. As I stated at the hearing, however, BSB

has misunderstood the nature of the inquiry that this Court is required to conduct in order to determine whether provisional relief should be entered.

BSB's claim is a pre-bankruptcy claim, and the assets at issue in the arbitration presently belong to the Debtor. The administration of those assets, and the treatment of claims of all of the Debtor's creditors (including BSB), in the first instance should be determined under Swedish law in the pending Swedish proceedings. That is precisely how things will work if and when the petition for recognition of the Swedish proceeding is granted; at that point, the automatic stay will apply, which will prevent the continuation of any pending proceeding and will bar the enforcement of creditor claims against the Debtor's assets. 11 U.S.C. § 1520(a)(1).

Section 1519 of the Bankruptcy Code permits me, on a provisional basis, to apply the automatic stay in advance of the formal hearing to consider recognition of the chapter 15 petition. Section 1519(e) of the Bankruptcy Code states that the "standards, procedures, and limitations applicable to an injunction shall apply to relief under this section." Those standards are well-known, and are met in this case.

First, the Debtor must show a likelihood of success on the merits of its pending petition for recognition of the foreign proceeding. *In re Silicon Valley Bank (Cayman Islands Branch)*, 658 B.R. 75, 88 (Bankr. S.D.N.Y. 2024). Whereas BSB this morning sought to focus on the likelihood of success on the Debtor's individual contract disputes with BSB, the correct focus is on whether the Debtor has established the likelihood that its request for recognition will be granted and as to whether the Debtor will be entitled, then, to the benefits of the automatic stay. *Id.* The Debtor has made a *prima facie* showing that recognition will be proper, and no party has disputed that fact.

Second, the Debtor must show "irreparable harm" in the absence of provisional relief. One of the main forms of "irreparable harm" that is relevant for me to consider in that regard is whether

3

the absence of the stay would undermine the Swedish bankruptcy proceedings and the rights and abilities of the Swedish administrator to maximize the value of the estate and to ensure the equal treatment of all of the Debtor's creditors. *See In re Andrade Gutierrez Engenharia S.A.,* 645 B.R. 175, 181-2 (Bankr. S.D.N.Y. 2022); *Lyondell Chem. Co. v. Centerpoint Energy Gas Servs.* 402 B.R. 571, 590 (Bankr. S.D.N.Y. 2009); *In re Alert Holdings*, 148 B.R. 194, 200 ( Bankr. S.D.N.Y. 1992). That is why section 1519 provides for provisional relief should be granted if it is "urgently needed to protect the assets of the debtor or the interests of the creditors" of the debtor. 11 U.S.C. § 1519(a). "As a rule, therefore, irreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of other creditors." *In re MMG LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000); *In re Garcia Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003). The proper focus is on the protection of the debtor's assets and the protection of the ability of the foreign court to ensure fair treatment of all creditors. Or to put it another way: if the application of the automatic stay were to be delayed until the recognition hearing were held, would that delay irreparably undermine the very purposes for which the automatic stay would later be applied?

The relief that the arbitrator ordered (which I understand has not been confirmed by a Court), and the relief that BSB wants the freedom to pursue, plainly would be irreparably harmful to the interests of the Debtor and the administrator and would irreparably interfere with the conduct of the Swedish proceeding. It potentially would remove assets from the estate and from the supervision of the Swedish court; it would prevent the administrator from making any effective effort to take control of the BSB arbitration on the Debtor's behalf; it would potentially give BSB better recoveries than other creditors might receive; it would take away the ability of the Swedish court to determine how BSB's claims should be treated under Swedish bankruptcy law; and it

4

would do all these things in ways that could not be undone, as the various pieces of the business would have been disassembled and returned to BSB. In short, BSB's arguments about what it hopes to accomplish in the arbitration just underscore how irreparably harmful the continuation of the arbitration, and/or the enforcement of decisions made in the arbitration, would be to the Debtor and to its estate, and to the interests of creditors as a whole.

BSB's argument today about irreparable harm focused on BSB's own interests. The gist of its argument was that BSB would be better off if it could enforce its rights as though no bankruptcy filing had occurred, and that BSB would be harmed if it were prevented from doing so. But as noted above, the proper focus is on whether the absence of a stay would irreparably harm the Debtor's interests in marshalling its assets and in providing for the orderly and fair treatment of all creditor claims. 11 U.S.C. § 1519(a). The whole purpose of the automatic stay is to stop individual creditors such as BSB from seizing assets and from making efforts, outside of the bankruptcy proceeding, to enforce their own individual claims. That stay serves the greater goals of allowing the Debtor to maximize the value of an estate for the benefit of all creditors and of ensuring the fair and equal treatment of all creditors. What is relevant for me to consider today is not whether the stay might be inconvenient to BSB, but whether the purposes of the stay (and of the Swedish proceedings in general) would be undermined if the application of the automatic stay were to be delayed, and it clearly would be.

Third, the Debtor must show that the balance of hardships favors issuance of the requested relief. For the reasons stated above, I find that it does. Bankruptcy may not be to BSB's liking, but section 1520(a) of the Bankruptcy Code contemplates that BSB should be subject to an automatic stay upon the likely recognition of the foreign proceeding, and there would be no equity in permitting BSB over the next several weeks to pursue its individual creditor interests to the

5

detriment of the estate and the creditor body as a whole. Instead, the interests of the bankruptcy estate and of other creditors call for the issuance of provisional remedies.

Finally, the proposed relief must be consistent with public policy. It is appropriate for this Court to lend its assistance to the Swedish court and to prevent actions here that could undermine the purposes of the Swedish proceeding and the authority of the Swedish court, and provisional relief here is proper for those reasons.

For these reasons, and for those reasons stated on the record at the hearing today, I make the following findings:

    A.    This Court has jurisdiction to consider the motion under 28 U.S.C. §§ 157 and 1334 and General Order M-431.

    B.    This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

    C.    Venue is proper before this Court under 28 U.S.C. § 1410.

    D.    There is a substantial likelihood that Petitioner will successfully demonstrate the Swedish Proceeding constitutes a "foreign main proceeding" under 11 U.S.C. § 1502(4) and satisfies all other prerequisites to recognition. Among other things, the Petitioner has provided evidence that would be sufficient to show (in the absence of contrary evidence) that (1) the Debtor has property in the United States (in the form of a retainer payment held by counsel), (2) the Debtor is subject to a foreign proceeding, (3) the Petitioner has been appointed as the administrator in that foreign proceeding, and (4) the Debtor has its center of main interests in Sweden (where the foreign proceeding is pending).

    E.    Application of the automatic stay on an interim basis is necessary and appropriate to protect the Debtor from the irreparable harm that would be associated with (a) the continued prosecution or enforcement of claims that may need to be resolved in the Swedish proceeding, (b)

the potential seizure of assets that presently belong to the estate and that presently are under the supervision of the Swedish court, (c) the potential issuance and enforcement of orders directing the payment of money, the return of assets or other relief, which could not be undone, and (d) the issuance of rulings or other developments that could adversely affect the rights of the Debtor. Such irreparable harm to the Debtor includes, but is not limited to, harms that would result if the arbitration proceeding by BSB were permitted to continue and/or if any award or enforcement remedies were to be directed against the Debtor or its property.

F.  The application of the automatic stay on an interim basis is also necessary to protect the ability of the Petitioner to represent the interests of the Debtor and its constituents in any litigation or other proceeding that is pending in the United States or that may be commenced in the United States, including the BSB arbitration.

G.  Protection of the Debtor's assets within the United States also is necessary and appropriate to preserve such assets, to preserve stakeholder rights and to ensure fair and equitable treatment of creditors in the Swedish Proceeding.

H.  The provisional relief set forth herein will preserve the status quo but will not prejudice the substantive rights of BSB (which is a claimant in an arbitration proceeding against the Debtor) or the rights of Products of Performance LLC ("POP") (which is a party in pending litigation with the Debtor). The balance of hardships favors the issuance of such relief.

I.  The public policy of ensuring even-handed enforcement of rules of the foreign proceeding also favors the relief set forth herein.

J.  Appropriate, sufficient and timely notice of the filing of the motion and the hearing have been given on shortened notice pursuant to FRBP 9006(c).

Based on the foregoing findings and after due deliberation and sufficient cause appearing therefor, and for reasons stated on the record at the hearing on the motion,

IT IS HEREBY ORDERED, pursuant to 11 U.S.C. §§ 1519 and 1521:

1. During the period between the entry of this Order and the entry of a ruling on the petition for recognition of the Debtor's foreign proceeding, the automatic stay under 11 U.S.C. § 362(a) shall apply to the Debtor and its property located within the territorial jurisdiction of the United States.

2. For the avoidance of doubt, and without limiting the generality of the preceding paragraph, during the period specified in paragraph 1:

   (a) the arbitration proceeding commenced by BSB against the Debtor is hereby stayed in its entirety;

   (b) the litigation commenced by POP is hereby stayed in its entirety;

   (c) no creditor of the Debtor shall have the right to transfer, encumber or otherwise dispose of, or execute against, any asset of the Debtor; and

   (d) execution against the Debtor's assets is hereby stayed.

3. No bond or other security shall be required pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, as incorporated by Rule 7065 of the Federal Rules of Bankruptcy Procedure.

4. This Order shall be effective immediately and enforceable upon its entry.

5. Copies of this Order shall be served as follows:

   (a) Service shall be made by email and by personal delivery, as promptly as is practicable, upon (i) BSB and its counsel, (ii) POP and its counsel, and (iii) the arbitrator in the pending arbitration brought by BSB against the Debtor.

(b) Service shall be made by regular mail, and/or by such other means of service as are permitted under the applicable rules, upon (i) the Office of the United States Trustee, (ii) any and all known United States creditors of the Debtor other than BSB and POP, and (iii) any and all parties that have entered an appearance herein.

Service in accordance with this Order shall be deemed good and sufficient for all purposes.

6. This Court shall retain jurisdiction with respect to the enforcement of this Order and any request for relief from the provisions hereof for cause shown.

Dated: New York, NY
September 18, 2024

**s/Michael E. Wiles**
Hon. Michael E. Wiles
United States Bankruptcy Judge
